IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

NINAN CHACKO,                          §
                                       §
          Plaintiff,                   §
                                       §
VS.                                    §   NO. 4:04-CV-886-A
                                       §
SABRE, INC., ET. AL,                   §
                                       §
          Defendants.                  §


MEMORANDUM OPINION
and
ORDER

     Came on for consideration the motion of defendants, Sabre,

Inc.; Sabre, Inc. Severance Plan; Manager, Corporate Employee

Relations of Sabre, Inc., as Plan Administrator of Sabre, Inc.

Severance Plan ("Plan Administrator"); Benefits Administration

Committee of Sabre, Inc.; Michael Haefner, David Schwarte, and

Eric Speck, as members of the Benefits Administration Committee

of Sabre, Inc.; Benefits Administration Committee of Sabre, Inc.

Appeal Committee; Joseph V. Libonati, as Chairman-Appeals

Committee of Sabre, Inc.; Sabre, Inc. Executive Severance Policy

for Senior Vice Presidents; and, Senior Vice President of

Compensation, Benefits & Equity of Sabre, Inc., as Plan

Administrator and Named Fiduciary of Sabre, Inc. Severance Policy

for Senior Vice Presidents, (collectively, "defendants"), for

summary judgment.  The court, after having considered the motion,

the response of plaintiff, the reply of Sabre, the evidentiary

material submitted by the parties in support of their respective

positions, the record, and the legal authorities provided by the

plaintiff during the telephone conference between the court and the attorneys on October 3, 2005, concludes that the motion should be granted, except as to the request for attorneys' fees.

I.

## Plaintiff's Complaint

Plaintiff, Ninan Chacko, ("Chacko") filed his original complaint on November 26, 2004.  On May 16, 2005, Chacko filed an amended complaint that remains his active pleading.  He asserts claims for: (1) wrongful denial of benefits under § 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B); (2) discrimination for the purpose of interfering with the exercise of rights under an employee benefit plan in violation of ERISA § 510, 29 U.S.C. § 1140; and (3) penalties for failure to supply plan information pursuant to ERISA § 502(c), 29 U.S.C. § 1132(c).

II.

## Grounds for the Motion

Defendants move for summary judgment on the following grounds:

1.  As to the claim for wrongful denial of benefits, defendants urge that (a) there is no evidence that the denial of benefits was an abuse of discretion by the Plan Administrator, (b) the claim fails with respect to any defendant who did not exercise actual control with regard to the challenged benefits determination, and (c) Chacko had no vested rights to the severance benefits he seeks;

2

2.   As to the claim for discrimination, defendants urge that Chacko has offered no evidence of intent to improperly interfere with a right to benefits to which he was otherwise entitled; and

3.   As to the claim for penalties, defendants urge that (a) Chacko was provided a copy of the requested plan documents within thirty days of each such request, and (b) any documents not produced to Chacko were either beyond the document production requirements of ERISA § 502(c) or were not requested by Chacko.

In addition, defendants seek summary rulings awarding them attorneys' fees and costs under 29 U.S.C. § 1132(g)(1).

III.

Summary Judgment Principles

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  The moving party has the initial burden of showing that there is no genuine issue of material fact.  Anderson, 477 U.S. at 256.  The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986).  Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that

3

there is some metaphysical doubt as to the material facts.
Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S.
574, 586 (1986).  The party opposing the motion may not rest on
mere allegations or denials of pleading, but must set forth
specific facts showing a genuine issue for trial.  Anderson, 477
U.S. at 248, 256.  To meet this burden, the nonmovant must
"identify specific evidence in the record and articulate the
'precise manner' in which that evidence support[s] [its]
claim[s]."  Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994).
An issue is material only if its resolution could affect the
outcome of the action.  Anderson, 477 U.S. at 248.  Unsupported
allegations, conclusory in nature, are insufficient to defeat a
proper motion for summary judgment.  Simmons v. Lyons, 746 F.2d
265, 269 (5th Cir. 1984).

IV.

<u>Undisputed Evidence</u>

The following is an overview of the evidence pertinent to the motion for summary judgment that is undisputed in the summary judgment record.[1]

A.   <u>Chacko's Involuntary Termination and the Competing Severance Package</u>.

Prior to September 29, 2003, Chacko had been employed by Sabre, Inc., for nearly thirteen years.  On that date Chacko was informed that his position as a senior vice president with Sabre, Inc., was being involuntarily terminated, effective at a future date.  As of September 29, 2003, Sabre, Inc., had in effect a Severance Plan ("Severance Plan") providing the terms and conditions upon which Sabre, Inc., would grant involuntarily terminated employees severance benefits.  The Severance Plan provided for twenty-six weeks of salary benefits, paid in a lump sum, conditioned upon the execution by the terminated employee of an agreement and general release, in a form determined by Sabre, Inc., that releases all causes of action and claims against the employer and related parties ("AGR").

On September 30, 2003, Sabre, Inc., informed Chacko that he would be offered severance benefits that were the equivalent of benefits contemplated by a plan that became effective October 1, 2003, titled "Sabre Inc. Executive Severance Policy for Senior Vice Presidents" (the "Executive Plan") rather than the benefits

---

[1]The court is treating the stipulated facts recited in the joint pretrial order as part of the summary judgment record.

contemplated by the Severance Plan.  The Executive Plan provided
(a) for thirty-two weeks of salary benefits, not payable in a
lump sum, but, rather, over an eight-month period, and (b) that
Sabre, Inc., would only pay severance benefits if the employee
first signed an AGR containing non-compete and non-solicitation
provisions ("Expanded AGR").  Sabre, Inc., provided a proposed
Expanded AGR to Chacko, which he declined to sign.

B.   The Severance Plan is Amended, and Chacko Separates from
     Sabre.

     On October 7, 2003, the Severance Plan was amended to
include a requirement that, as a condition to the receipt of
benefits, the beneficiary sign the equivalent of the Expanded
AGR, and that, at the discretion of Sabre, Inc., severance
benefits may be paid either in a lump sum or in periodic
installments ("Amended Plan").  On October 17, 2003, Chacko
separated from Sabre, Inc.

C.   Chacko Applies for a Severance Package Under the Terms
     of the Severance Plan and His Subsequent Administrative
     Appeal.

     On November 3, 2003, Chacko submitted a claim for severance
benefits.  He said that he would sign the AGR, and demanded
payment of benefits in a lump sum.  In his claim for benefits
Chacko requested copies "of all documents governing the operation
of the Severance Plan, copies of the latest annual report (Form
5500 Series) filed by the Severance Plan with the U.S. Department
of Labor, and any summary plan descriptions."  Defs.' App. at 59.
On November 6, 2003, Chacko's claim for benefits was denied.  Not
only did the Plan Administrator conclude that the execution of an

Expanded AGR was required because of the terms of the Amended
Plan, it also took the position that the Severance Plan always
authorized the Plan Administrator to condition benefits on the
execution of the Expanded AGR.  A copy of the Amended Plan was
enclosed with the denial letter, along with a copy of the most
recent Form 5500 filing.

D.    Chacko's Administrative Appeal.

By letter dated December 30, 2003, Chacko indicated he
wished to appeal the November 6, 2003, denial of benefits.  He
requested copies of certain documents, including "[c]opies of all
plan documents . . . in effect from January 1, 1999 until October
7, 2003," documents "reviewed or relied upon by the plan
administrator in making the initial adverse determination to
deny" his claim, and documents "considered . . . in the course of
making Mr. Chacko's benefit determination."  Defs.' App at 73.

On January 6, 2004, Chacko was provided with various
documents, including copies of the Severance Plan, and the
Amended Plan.  On January 9, 2004, Chacko appealed to the Benefit
Appeals Committee, reiterating his objection to the requirements
that he sign the Expanded AGR and receive payment of severance
benefits over eight months as opposed to in a lump sum.  Chacko's
appeal was denied on March 10, 2004.

V.

Analysis

A.    Claim For Improperly Denied Benefits Under ERISA
      § 502(a)(1)(B).

Chacko asserts that he was wrongfully denied benefits under

the Severance Plan.[2]  ERISA § 502(a)(1)(B) provides that:

> A civil action may be brought . . . by a
> participant or beneficiary . . . to recover
> benefits due to him under the terms of his
> plan, to enforce his rights under the terms
> of the plan, or to clarify his rights to
> future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B).  Defendants argue in their motion that

Chacko is not due any benefits under the Severance Plan because

it was superseded by the Amended Plan.  Defendants assert that

there is no evidence showing that the Plan Administrator's

factual determinations were not fully supported by the

administrative record, or that the Plan Administrator's

interpretation of either Plan was an abuse of discretion.  Thus,

defendants' motion puts the burden on Chacko to adduce summary

judgment evidence that would support his claim that defendants

wrongfully denied him severance benefits.  For the reasons stated

below, the court concludes that there is no summary judgment

evidence to support Chacko's claim for wrongful denial of

benefits.

_____

    [2] In his amended complaint, Chacko alleged that "Defendants
wrongfully denied him benefits under the General Severance Plan and
VP Severance Plan [i.e., the Executive Plan]." Am. Compl. at 9, ¶
19.  However, Chacko clarified in his response that he "does not
contest his lack of entitlement to benefits under the VP Severance
Plan [i.e., the Executive Plan]." Pl.'s Resp. at 4 n.1.  Apparently,
Chacko now realizes that he never made a claim under the Executive
Plan, only the Severance Plan.

8

1.  <u>Standard of Review</u>.

A denial of ERISA benefits by a plan administrator
challenged under ERISA § 502(a)(1)(B) is reviewed by the court
under a <u>de novo</u> standard unless the plan gives the administrator
"discretionary authority to determine eligibility for benefits or
to construe the terms of the plan."  <u>Firestone Tire & Rubber Co.
v. Bruch</u>, 489 U.S. 101, 115 (1989).  Defendants correctly assert
that the Severance Plan grants such authority.[3]  Defs.' App. at
92.

Where, as here, the administrator is vested with such
discretionary authority, the administrator's interpretation of
the plan is reviewed under an abuse of discretion standard.
<u>Gosselink v. AT&T, Inc.</u>, 272 F.3d 722, 726 (5th Cir. 2001).
Therefore, the court's task as to the legal determinations is
two-fold: "First, a court must determine the legally correct
interpretation of the plan.  If the administrator did not give
the plan the legally correct interpretation, the court must then
determine whether the administrator's decision was an abuse of
discretion."  <u>Wilbur v. Arco Chem. Co.</u>, 974 F.2d 631, 637 (5th

---

[3] Section 7, entitled "Plan Administrator's Discretion," states:

Final determination of all benefits will be made in
accordance with the written terms of this severance plan.
The Plan Administrator shall have the discretionary
authority to determine all questions concerning an
employee's eligibility for benefits and the amount of
benefits payable (if any), to determine and resolve all
questions (factual or otherwise) relating to the severance
plan , and to interpret, in the Plan Administrator's sole
discretion, any and all terms of the severance plan.

Defs.' App. at 54.

Cir. 1992).  With regard to any factual determinations made by the administrator during the course of Chacko's appeal, the court will also review these under an abuse of discretion.  See Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc., 168 F.3d 211, 213 (5th Cir. 1999).

      2.   The Plan Administrator's Factual Determination as to Date of Termination of Employment Was Not an Abuse of Discretion.

In reaching its decision, the Plan Administrator found as a fact that Chacko's employment was terminated on October 17, 2003. Chacko disputes that finding.  He contends the date of termination was September 29, 2003.  And, he alleges that, if he was terminated on that date, then his claim to severance benefits would have vested prior to the creation of the Amended Plan.[4] Yet, when Chacko made his administrative appeal, he did not dispute that he was terminated on October 17, 2003.  In fact, he conceded in his benefits appeals letter that "October 17, 2003 [was] the official date of Mr. Chacko's termination."  Pl.'s App. at 47.  Inasmuch as there is nothing in the record to suggest that the Plan Administrator abused its discretion when it found that Chacko was terminated on October 17, 2003, the court accepts that finding as undisputed.

      3.   The Amended Plan Controls.

---

   [4] Had Chacko actually been terminated on September 29, 2003, the court would be inclined to agree with his contention that he was wrongfully denied severance benefits.  See Cirulis v. Unum Corp., 321 F.3d 1010 (10th Cir. 2003).

So long as an employer follows ERISA's procedures for amending a severance plan, <u>see</u> 29 U.S.C. § 1102(b)(3), the employer generally is afforded wide latitude, <u>see</u> <u>Wise v. El Paso Natural Gas</u>, 986 F.2d 929, 935 (5th Cir. 1993) ("ERISA simply does not prohibit a company from eliminating previously offered benefits that are neither vested nor accrued").  The Severance Plan gave Sabre, Inc., the right unilaterally to amend the plan at any time.[5]

Severance plans are welfare plans under ERISA.  In establishing ERISA, "Congress evidenced its recognition of the need for flexibility in rejecting the automatic vesting of welfare plans."  <u>Wise</u>, 986 F.2d at 935 (quoting <u>Moore v. Metropolitan Life Ins. Co.</u>, 856 F.2d 488, 492 (2d Cir. 1988)).  Chacko's rights under any version of Sabre, Inc.'s severance plans did not vest when he learned of his intended termination in September 2003.  <u>See</u> <u>Whittenmore v. Schlumberger Tech. Corp.</u>, 976 F.2d 922, 923 (5th Cir. 1992) (upholding severance plan amendments executed after beneficiaries learned of employer's decision to eliminate their positions via divestiture).  Because he had no vested right under any severance plan until he was

---

[5] In relevant portion, Section 8 stated that:

Participants have no vested right to benefits under the severance plan.  Sabre may amend or terminate the severance plan at any time.  Amendment or termination may be prospective or retroactive in the discretion of the Company.  Amendment or termination shall be by action of the Benefits Administration Committee . . . and shall be effective on the date specified therein.

Defs.' App. at 54.

terminated in October 2003, to avoid applicability of the Amended Plan Chacko would have to show some abnormality with the amendment process itself.

The record shows that the amendment procedures prescribed by the Severance Plan were followed.  After the amendment was executed, Chacko was notified.  <u>See</u> <u>Curtis-Wright Corp. v. Schoonejongen</u>, 514 U.S. 73, 84 (1995).  In sum, the Amended Plan became effective before Chacko's employment terminated.

Chacko has presented no evidence that rebuts or otherwise challenges the evidence upon which the Plan Administrator based his decision that the Amended Plan required the execution of the Expanded AGR.[6]  It clearly does contain such a requirement. Also, Chacko had no right to demand payment in a lump sum because under the Amended Plan whether severance benefits were paid in a lump some or periodically was left to Sabre, Inc.'s discretion. Therefore, the court concludes the Plan Administrator's decisions that the Amended Plan applied and that its terms required the Expanded AGR and authorized the periodic payment of benefits are

---

[6] The amended language stated that:

Sabre pays severance to [involuntarily terminated employees] EXCEPT when

. . . .

An employee who is otherwise eligible for severance fails to execute an Agreement and General Release (AGR) in a form determined by Sabre that releases all causes of action and claims against Sabre and related parties <u>and may include non-competition/or non-solicitation provisions, as well as any other provisions Sabre deems necessary in it sole discretion</u>.

Defs.' App. at 152 (emphasis in original).

12

legally accurate.   Certainly those decisions were not
unreasonable.

B.    Discrimination Claim Under ERISA § 510.

The court now considers whether Chacko has proffered any
summary judgment evidence in support of his claim against
defendants under ERISA § 510, 29 U.S.C. § 1140.[7]   The Fifth
Circuit has stated that "[t]o sustain a valid § 510 claim, an
employee must show: (1) prohibited (adverse) employer action (2)
taken for the purpose of interfering with the attainment of (3)
any right to which the employee is entitled."   Bodine v.
Employers Cas. Co., 352 F.3d 245, 250 (5th Cir. 2003).   From the
following, the court concludes that there is no summary judgment
evidence to support Chacko's claim for discrimination under
§ 510.

1.    There is no Evidence of Discriminatory Action.

Chacko has failed to adduce summary judgment evidence
showing any specific discriminatory intent on the part of
defendants.   The fact that Sabre, Inc., amended the plan is
insufficient because "ERISA does not broadly prevent an employer

---

[7]In its relevant portion, Section 510 reads as follows:

It shall be unlawful for any person to discharge, fine,
suspend, expel, discipline, or discriminate against a
participant or beneficiary for exercising any right to
which he is entitled under the provisions of an employee
benefit plan . . . or for the purpose of interfering with
the attainment of any right to which such participant may
become entitled under the plan . . . .

29 U.S.C. § 1140.

from 'discriminating' in the creation, alteration or termination of employee benefits plans." <u>McGann v. H & H Music Co.</u>, 946 F.2d 401, 408 (5th Cir. 1991).   Since Chacko was not entitled to any ERISA benefit at the time the plan was amended, it is flawed to suggest that the amendment was itself discriminatory.  <u>See</u> <u>Curtis-Wright Corp.</u>, 514 U.S. at 78.   Even assuming there was a connection between Chacko's termination and the amendment of the Severance Plan, there is no fact from which an improper discriminatory purpose could reasonably be inferred.

2.    There is no Evidence of Improper Interference.

Chacko's facts also do not show that defendants' actions were designed to interfere with his attainment of benefits.  In fact, Chacko could have received a severance package had he simply performed the condition precedent: execution of the Expanded AGR.  Thus, Chacko fails on this second prong as well.

3.    Chacko Was Not Entitled to Benefits.

Finally, Chacko was never entitled to any benefit under the Severance Plan that would make § 510 applicable.  Chacko could only become "entitled pursuant to an existing, enforceable obligation assumed by [Sabre]."  McGann, 946 F.2d at 405.  None of the evidence highlighted by Chacko demonstrates that such an obligation on the part of any of the defendants ever had, or ever would, exist.

C.    Penalties Claim Under ERISA § 502(c)(1)(B).

In his third claim Chacko seeks penalties under ERISA § 502(c)(1)(B), 29 U.S.C. § 1132(c)(1)(B), for defendants' alleged failure timely to furnish copies of the Severance Plan and the Executive Plan within 30 days following a written request on November 3, 2003.[8]  As a civil penalty provision, the court

_____

[8] Section 502(c) states, in relevant part, that a plan administrator

who fails or refuses to comply with a request . . . within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c)(1)(B).

15

must strictly construe ERISA § 502(c).  <u>See</u> <u>Fisher v.</u>
<u>Metropolitan Life Ins. Co.</u>, 895 F.2d 1073, 1077 (5th Cir. 1990).
The court will not impose penalties unless Chacko specifically
requested the information that he claims was not provided.  <u>See</u>
<u>Matassarin v. Lynch</u>, 174 F.3d 549, 570 (5th Cir. 1999).  There is
no summary judgment evidence of the bad faith required to recover
statutory penalties.[9]

D.   <u>Attorneys' Fees and Costs</u>.

      Finally, defendants seek costs of action and attorneys' fees
pursuant to ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1).

      Rule 54(d)(1) of the Federal Rules of Civil Procedure
provides that, "[e]xcept when express provision therefor is made
either in a statute of the United States or in these rules, costs
other than attorneys' fees shall be allowed as of course to the
prevailing party unless the court otherwise directs . . . ."  In
a sense, § 502(g)(1) is an "express provision" as contemplated by
Rule 54(d)(1) inasmuch as it is a statutory directive that gives
the court discretion to tax costs of action against either party.
The court has concluded that costs of action should be taxed
against plaintiff in favor of defendants.

_____

      [9]In response to Chacko's document request of November 3, 2003,
defendants responded by furnishing a copy of the Amended Severance
Plan.  Since the ERISA § 104(b)(4) only requires Sabre to "furnish a
copy of the latest updated summary plan description," it would appear
Sabre complied.  Thus, the court does not find any grounds for
penalties with regard to the November 3, 2003, request.  Next, Chacko
claims he requested a copy of the Executive Plan on December 30,
2003.  The record shows that the Executive Plan was not specifically
requested. In addition, since Chacko never made a claim under the
Executive Plan it is entirely reasonable for the Plan Administrator
not to produce a copy of it.

Rule 54(d)(2) of the Federal Rules of Civil Procedure contemplates that a request for recovery of attorneys' fees, such as defendants are making, be made by a motion.  Typically, the motion would be made post-judgment.  However, the court knows of no reason why the motion cannot be made as part of a motion for summary judgment.  Therefore, the court interprets the contents of defendants' motion as asking the court to make a discretionary ruling, based on the record that now exists, as to whether an award of attorneys' fees should be made in favor of defendants against plaintiff and, if so, the amount that should be awarded. After having considered the factors the Fifth Circuit has directed be considered, <u>see</u> <u>Iron Workers Local No. 272 v. Bowen</u>, 624 F.2d 1255, 1266 (5th Cir. 1980), the court has concluded that defendants should not be awarded attorneys' fees against plaintiff.

VI.

<u>Plaintiff's Motion for Partial Summary Judgment</u>

In addition to the motion of defendants for summary judgment, the court has before it for decision a motion filed by Chacko for partial summary judgment on the issue of penalties under 29 U.S.C. § 1132(c)(1)(B).  For reasons given above, the court concludes that Chacko's motion should be denied.

VII.

<u>O R D E R</u>

For the reasons discussed herein,

17

The court ORDERS that all claims asserted by Chacko against defendants in the captioned action be, and are hereby, dismissed.

The court further ORDERS that plaintiff's motion for partial summary judgment be, and is hereby, denied.

The court further ORDERS that defendants recover from Chacko costs of court incurred by them, but that they be denied any recovery of attorneys' fees.

SIGNED October ___5___, 2005.


_____/s/ John McBryde_____
JOHN McBRYDE
United States District Judge

18